UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

MARTHA J. THOMAS,          )
                                                )
     Plaintiff,                )
                                                )
     v.                     )          CIVIL NO. 1:16cv287
                                                  )
NANCY A. BERRYHILL, Acting    )
Commissioner of Social Security,    )
                                                )
     Defendant.             )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §416(I). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.

2.	The claimant has not engaged in substantial gainful activity since October 30, 2012, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.	The claimant has the following severe impairments: mild degenerative disc disease (DDD) of cervical and thoracic spine, mild spondylosis of lumbar spine and mild cervical dextroscoliosis (Exhibit 10F); obesity; migraine headaches; asthma/allergies; mild sleep apnea; depressive disorder and generalized anxiety disorder (Exhibits 2F to 16F) (20 CFR 404.1520(c) and 416.920(c)).

4.	The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.	After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with lifting/carrying/pushing/pulling of 20 pounds occasionally and 10 pounds frequently, standing and/or walking approximately six hours per eight hour workday, and sitting approximately six hours in eight hour workday, with normal breaks.  Additional limitations include occasional climbing of ramps/stairs, balancing, stooping, crouching, kneeling, crawling and occasional cervical extension (looking up) for overhead work and lifting. She is precluded from climbing ladders, ropes or scaffolds, and needs to avoid concentrated exposure to extremes of heat/cold and humidity and avoid bright and/or flashing lights, excessive noise, excessive vibration, wetness, irritants such as fumes, odors, dust, gases and poor ventilation, and hazards of unprotected heights, slippery or uneven terrain, and dangerous, unguarded machinery.  While unable to engage in complex or detailed tasks, she remains capable of performing simple, routine and repetitive tasks consistent with unskilled work and is able to sustain and attend to task throughout the eight-hour workday.  She is limited to low stress work defined as having only occasional decision making required and only occasional changes in the work setting. She is limited to superficial interaction with coworkers, supervisors and the public involving only occasional and casual contact absent requirement for prolonged conversation or discussion of involved issues, while allowing supervisory contact to obtain necessary instruction.

6.	The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.	Claimant born October 16, 1968, was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82041 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  Claimant has not been under a disability, as defined in the Social Security Act, from October 30, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22-34).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review.  This appeal followed.

Plaintiff  filed her opening brief on January 20, 2017.  On April 20, 2017, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply.  Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled.  See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?
> (3)  Does the impairment meet or exceed one of a list of specific

impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

In support of remand or reversal, Plaintiff argues that the ALJ improperly analyzed and weighed the opinion of Dan L. Boen, Ph.D., a non-treating psychological consultative examiner. The evidence relating to Dr. Boen is as follows.

On January 23, 2013, Dr. Boen examined Plaintiff (Tr. 423-26). Plaintiff reported feeling sad and depressed most of the time; having trouble concentrating and focusing; having daily anxiety and panic attacks triggered by getting upset or anxious, but some were not too bad; experiencing nervousness in social situations, and feeling agitated and irritable (Tr. 423). She reported bathing and dressing every other day, but sometimes went a week or two without showering and did not know why (Tr. 423). She last worked two years earlier (Tr. 423). She had worked at a pizza place for a year, but she was no longer needed to make the dough (Tr. 423). She reportedly cooked once or twice a week; did laundry every two days; did not clean very often; and went shopping quickly because it made her irritable (Tr. 424). She had been married and divorced twice and lived with her four children (Tr. 424). She had four or five friends, but did not want to see them; saw neighbors every two days; and saw her mother frequently because her mother took her places (Tr. 424).

Plaintiff reported taking Fluoxetine (Prozac) for the last year and had previously taken Lexapro and then Cymbalta (all anti-depressants) (Tr. 424). She also took Alprazolam (Xanax) (Tr. 424). She had previously stopped taking her medication because she did not think it worked and felt no different when she resumed it (Tr. 424). She had never been in counseling (Tr. 424).

Dr. Boen opined that Plaintiff did not need help with handling or managing money (Tr. 426). After a mental status exam, Dr. Boen concluded that Plaintiff's short and long-term memories were moderately deficient; immediate recall was normal; concentration was mildly deficient; and thought form, mood, affect, intelligence, judgment, and insight were all normal (Tr. 426). He diagnosed generalized anxiety disorder and recurrent major depressive disorder, moderate, and assigned her a GAF score of 45 (Tr. 426). He opined that she could understand what she was asked to do, but would have trouble remembering it; could not concentrate and stay on task; and would have trouble relating to her coworkers and boss (Tr. 426).

One day later, state reviewing psychologist Dr. Lovko opined, as his Step Three opinion, that Plaintiff's impairments did not meet or medically equal any mental health listing and that she had mild limitations in activities of daily living and moderate limitations in social functioning and concentration, persistence, or pace (Tr. 103-04, 124-25). For his mental RFC opinion, he opined that Plaintiff could understand, remember, and carry out unskilled tasks; relate on at least a superficial and ongoing basis with coworkers and supervisors; attend to tasks for a sufficient period to finish them; and manage the stresses involved with unskilled work (Tr. 108-09). Four months later, state reviewing psychologist Dr. Larsen reviewed Plaintiff's file and affirmed Dr. Lovko's opinion as written (Tr. 124-25, 131).

6

In April and early May 2013, Nurse Practitioner (NP) Lynn Huett and Dr. Mark O'Brien treated Plaintiff for headaches and neck stiffness, for which she was prescribed Demerol and a muscle relaxant, respectively (Tr. 464-67). She had a normal mental status exam with appropriate affect and demeanor, normal remote and recent memory, and good insight and judgment (Tr. 464, 467). In late May 2013, Plaintiff saw NP Huett, supervised by Dr. Emilio Vazquez, for upper back pain, for which she was referred to physical therapy (Tr. 462-63). She again had a normal mental status exam with appropriate affect and demeanor, normal remote and recent memory, and good insight and judgment (Tr. 460). In June 2013, Plaintiff saw NP Huett for a rash and neck pain (Tr. 460-61). She had a normal mental status exam with appropriate affect and demeanor, normal remote and recent memory, and good insight and judgment (Tr. 460). The following month, Plaintiff saw NP Huett with complaints of back pain (Tr. 454). At that time, she was taking Xanax and Prozac (Tr. 454). She again had a normal mental status exam with appropriate affect and demeanor, normal remote and recent memory, and good insight and judgment (Tr. 454).

In October 2013, Plaintiff saw NP Huett for medication refills and complaints of a headache and neck pain (Tr. 450). She had a normal exam, including, again, a normal mental status exam with appropriate affect and demeanor, normal remote and recent memory, and good insight and judgment (Tr. 451). On November 6, 2013, Plaintiff saw NP Lynn Huett due to worsening depression symptoms (Tr. 446). She indicated that the depression had been present for some time, but could not estimate the actual duration (Tr. 446). She was taking Prozac and Xanax (Tr. 446). She complained of anxious mood and decreased concentration, among other symptoms (Tr. 446). She reported fleeting suicidal thoughts and reportedly almost sent herself

to an inpatient facility (Tr. 446). Upon mental status exam, Plaintiff had agitated, depressed, and anxious mood; intact recent and remote memory; and fair insight (Tr. 446). NP Huett diagnosed Plaintiff with depressive disorder NOS and replaced Prozac with Effexor, beginning at 37.5 mg daily for one week then to 75 mg daily (Tr. 447).

Two weeks later, Plaintiff saw NP Huett for follow-up regarding depression NOS and a Xanax refill (Tr. 444). Plaintiff was reportedly diagnosed with depression 10 years earlier and had been experiencing an episode of moderate depression for the previous two months (Tr. 444). Upon mental status exam, she admitted to suicidal ideation, had slowed speech, and a depressed mood/affect, but fair insight and judgment, intact recent/remote memory, average intelligence, normal thought content/pattern and speech, and good abstract reasoning (Tr. 444-45). NP Huett increased Plaintiff's Xanax dosage from .25 mg to .5 mg and left her Effexor dosage unchanged (Tr. 444-45). She and Dr. Vazquez encouraged Plaintiff to seek counseling (Tr. 445). Plaintiff claimed that she did not have a working car to go any place that she could not walk (Tr. 445). She also did not want to get any mental health treatment through Butler University because she would not trust them not to tell others what was going on with her (Tr. 445).

Two months later, Plaintiff saw NP Huett for follow-up on low back pain (Tr. 442-43). She had a normal mental status exam with appropriate mood and demeanor and normal remote and recent memory (Tr. 441). Her medications remained Xanax and Effexor at the same dosages (Tr. 440). Later in January, Plaintiff was also treated for carpal tunnel syndrome and had a normal mental status exam at that appointment as well (Tr. 443).

In February 2014, Plaintiff saw Dr. O'Brien with complaints of a headache for which Dr. O'Brien administered Demerol (Tr. 439). She had no psychiatric complaints and specifically

denied anxiety, trouble concentrating, depression, or stress (Tr. 438). She had a normal mental status exam with appropriate mood and demeanor and normal remote and recent memory (Tr. 437). Her medications remained Xanax and Effexor at the same dosages (Tr. 438, 440-41).

In March and April 2014, NP Huett reported that Plaintiff had normal mental status exams with appropriate mood and demeanor and normal remote and recent memory (Tr. 437). Her medications remained Xanax and Effexor at the same dosages (Tr. 435).

In May 2014, Plaintiff saw NP Huett for routine follow-up regarding her depression NOS (Tr. 430-31). She had a normal mental status exam with appropriate mood and demeanor and normal remote and recent memory (Tr. 431). NP Huett diagnosed Plaintiff with depressive disorder NOS and refilled her Effexor at the same dosage (Tr. 431-32). Plaintiff was also taking Xanax at that time (Tr. 431).

In July 2014, Plaintiff saw NP Huett for a migraine over the previous four days and for follow-up regarding worsening back pain with stiffness and numbness in her arms and hands (Tr. 427-28, 433-34). She was taking Xanax and Effexor (Tr. 428, 433). She had a normal mental status exam with appropriate mood and demeanor and normal remote and recent memory (Tr. 434). NP Huett renewed Plaintiff's medications and referred her to physical therapy (Tr. 434).

In September 2014, Plaintiff saw NP Huett for follow-up of her fibromyalgia and low back pain (Tr. 553). She had a normal mental status exam with appropriate mood and demeanor and normal remote and recent memory (Tr. 553-54). She was still taking Xanax and Effexor at the same dosages (Tr. 553). NP Huett did not change her medications (Tr. 553-54).

As this review of the evidence shows, the ALJ properly weighed Dr. Boen's opinions and gave good reasons for finding that his opinions regarding Plaintiff's memory, ability to

concentrate and stay on task, and social functioning were not supported by and were inconsistent with the record, including Dr. Boen's own exam results and Plaintiff's own report of symptoms to him (Tr. 30, 425-26).

Contrary to Plaintiff's claim, the ALJ committed no reversible error in weighing Dr. Boen's opinion (Tr. 30). The opinions of an examining physician, such as Dr. Boen, are reviewed for supportability and consistency with the other substantial evidence of record. *See* 20 C.F.R. § 404.1527(e); SSR 96-2p. Among other things, Dr. Boen opined that Plaintiff could understand what she was asked to do, but would "have trouble" remembering it; would "have trouble" concentrating and staying on task; and would "have trouble" relating to her co-workers and boss (Tr. 426). The ALJ cited substantial evidence in finding that each of these limitations was not supported by and was inconsistent with the medical evidence – a finding the regulations entitled her to make (Tr. 30). *See id.*; *see also Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009) ("An ALJ is entitled to evaluate the evidence and explanations that support a medical source's findings.").

Immediately before even weighing Dr. Boen's opinion, the ALJ considered that Plaintiff had longstanding, effective use of the same medications, with Xanax being prescribed for years for anxiety and Effexor likewise being prescribed for years after Prozac was found to be ineffective in treating Plaintiff's depression; that Plaintiff's longstanding mental status exams with Dr. Vazquez and NP Huett were largely normal except for when they sometimes observed a depressed and/or anxious mood that medication adjustments largely addressed; that Dr. Vazquez recommended counseling, which Plaintiff did not pursue for conflicting reasons; and that Dr. Boen himself reported largely normal or mild exam results (Tr. 29-30). The ALJ noted that

after a mental status exam, Dr. Boen concluded that Plaintiff's short and long-term memories

were moderately deficient; immediate recall was normal; concentration was mildly deficient; and

thought form, mood, affect, intelligence, judgment, and insight were all normal (Tr. 426).

The ALJ then analyzed Dr. Boen's opinion and cited substantial evidence in rejecting the

opinion (Tr. 30). First, the ALJ rejected Dr. Boen's opinion that Plaintiff would have trouble

remembering instructions because, except for Dr. Boen's one-time exam, Plaintiff consistently

had intact memory with treating sources Dr. Vazquez and NP Huett on multiple exams (Tr. 30).

Even Dr. Boen reported no more than moderate deficits with short and long-term memory and

none with immediate recall (Tr. 426). The ALJ also noted the activities of daily living that

Plaintiff reported to Dr. Boen and found them to be inconsistent with trouble remembering what

to do on a job (Tr. 30). The ALJ next contrasted Dr. Boen's opinion that Plaintiff would have

trouble concentrating and staying on task with Dr. Boen's own exam findings showing only mild

concentration deficits and an ability to attend to and sustain during the exam (Tr. 30). Finally,

the ALJ contrasted Dr. Boen's opinion that Plaintiff would have trouble relating to coworkers

and her boss with no indication that she was unable to relate to Dr. Boen and her own reports to

Dr. Boen that she had friends, saw neighbors, and could shop (Tr. 30).

For these reasons, the ALJ found that it appeared that the basis for greater deficits was

based on Plaintiff's subjective report rather than any actual clinical observations (Tr. 30). This

finding was not unreasonable, given that in rejecting Dr. Boen's opinion, the ALJ had pointed

out, the mostly normal to mild exam findings from Dr. Boen himself combined with Plaintiff's

mostly normal mental status exams over the course of treatment with Dr. Vazquez and NP Huett.

*See, e.g., Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (opinions on which ALJ should rely

need to be based on independent observations) . These were all reasonable bases to reject Dr.

Boen's opinions. *See* 20 C.F.R. § 404.1527(d) (listing consistency and supportability as factors);

*see also Simila*, 573 F.3d at 516 ("An ALJ is entitled to evaluate the evidence and explanations

that support a medical source's findings.").

Plaintiff argues that Dr. Boen's status as a consulting psychologist retained by the

Agency "further bolstered his opinion," but that does not mean that the ALJ was not obligated to

review Dr. Boen's opinion for consistency and supportability, nor that she erred in doing so (Brf.

at 9-10; Tr. 30). *See* 20 C.F.R. § 404.1527(e); SSR 96-2p (listing supportability and consistency

as factors). Plaintiff also stresses that no other mental health professional examined Plaintiff

(Brf. at 9), but this factor alone does not show error. Plaintiff has not shown that the ALJ erred

when she considered that Dr. Boen was an examining psychologist, but also noted that he was a

one-time examining psychologist whose opinions were unsupported by and inconsistent with

even his own exam findings (Tr. 30). See 20 C.F.R. § 404.1527(d) (listing specialty, but also

listing frequency and nature of contact, consistency, and supportability as factors).

Plaintiff does not acknowledge the ALJ's litany of reasons for rejecting Dr. Boen's

opinion, but instead seizes solely on the ALJ's reference to Plaintiff's subjective report (Brf. at

10). Plaintiff argues that this was "an absurd comment because subjective report is an integral

part of most psychological/psychiatric evaluations" (Brf. at 10). But Plaintiff cites the ALJ's

finding in isolation and out of context, wrongly suggests that it was the only reason the ALJ gave

for rejecting Dr. Boen's opinion, and fails to acknowledge the myriad reasons the ALJ gave for

rejecting the opinion (Brf. at 10). Moreover, as previously discussed, the ALJ's finding was not

unreasonable, given that even Dr. Boen's exam results themselves did not support his rather

restrictive opinion (Tr. 425-26).

Plaintiff argues that the ALJ "cherry picked" from Dr. Boen's opinion, but she is mistaken (Brf. at 10-11). Rather, the ALJ gave good reasons for rejecting the opinion and cited substantial evidence in support of her mental RFC finding, which evidence included the opinions of the state agency reviewing psychologists and which finding contained several specific restrictions that Plaintiff entirely ignores, including a limitation to low-stress work and significant social limitations addressing Plaintiff's professed stressors (Tr. 29-30, 32-33; Brf. at 10-11).

Plaintiff contends that the ALJ did not address Plaintiff's trouble with concentration and difficulty staying on tasks, which, Plaintiff claims, would have precluded all work (Brf. at 11). But this argument presupposes that the ALJ should have accepted Dr. Boen's opinion. It ignores that the ALJ rejected Dr. Boen's opinion that Plaintiff would have trouble concentrating and staying on task because Dr. Boen observed only mild concentration problems and Plaintiff showed an ability to attend and sustain during the exam (Tr. 30). Plaintiff also ignores that the ALJ found that she was able to sustain and attend to tasks throughout the workday after finding no evidence from Dr. Boen's exam to support his finding otherwise (Tr. 25, 30).

Finally, Plaintiff again suggests that the ALJ could not have rejected Dr. Boen's opinion because he was retained by the Agency and that in so doing, the ALJ must have played doctor (Brf. at 11). However, Plaintiff, once again, ignores the good reasons the ALJ gave for rejecting Dr. Boen's opinion and the substantial evidence that she cited in finding that the opinion was not supported by and was inconsistent with the other record evidence (Tr. 29-30).

Next, Plaintiff argues that the ALJ failed to build an accurate and logical bridge from the

evidence to the conclusion in relation to walking/standing and balancing. However, it is clear that the ALJ sufficiently supported and articulated her RFC finding (Tr. 25-33). The ALJ's RFC finding was in accordance with the regulations and SSR 96-8p. SSR 96-8p explains what the ALJ must include in her RFC analysis. SSR 96-8p essentially requires a narrative discussion of the record evidence and an explanation as to how the evidence supports the ALJ's RFC findings. *See* SSR 96-8p, 1996 WL 374184 at *7 (July 2, 1996). SSR 96-8p also provides that the ALJ's RFC analysis must discuss the claimant's symptoms and the medical source opinions. *Id*. Here, in formulating Plaintiff's RFC, the ALJ provided a detailed narrative discussion of the medical and nonmedical evidence, and assessed Plaintiff's abilities in accordance with 20 C.F.R. § 404.1545 and SSR 96-8p (Tr. 25-33).

Plaintiff incorrectly claims that the ALJ erred by finding that she could stand and walk for six hours per workday and balance only occasionally, *i.e*, up to one-third of the workday (Brf. at 12-13). Plaintiff cites no authority for her argument and instead surmises only that "balancing is inherently involved in standing and walking" (Brf. at 12).

However, the regulations and SSR 96-9p define balancing as "maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces." SSR 96-9p (July 2, 1996). Thus, although the ALJ found that Plaintiff could balance occasionally, this would only occur when she was walking or standing. Plaintiff does not provide any citation to Agency policy or case law to support finding a contradiction between these findings as she suggests.

Moreover, the vocational expert (VE) testified that there were a significant number of jobs that an individual with Plaintiff's residual functional capacity could perform (Tr. 34).

Plaintiff's then-counsel did not challenge the VE's testimony on this point. *See Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) (VE "free to give a bottom line," but data and reasoning underlying bottom line must be given if claimant challenges foundation of VE's testimony). In any event, the Dictionary of Occupational Titles (DOT) reveals that in at least two of the representative jobs the VE identified, no balancing is required: electronics worker (30,500 jobs nationally), DICOT 726.687-010, 1991 WL 679633 (Jan. 1, 2016), and folder (121,000 jobs nationally), DICOT 369.687-018, 1991 WL 673072 (Jan. 1, 2016). Thus, even if Plaintiff provided more than her own conjecture in arguing that there was a contradiction between the ALJ's finding that Plaintiff could only stand or walk for six hours and balance occasionally, any error would be harmless. Plaintiff's unsupported argument fails.

This court holds that the ALJ reasonably assessed Plaintiff's residual functional capacity by weighing the evidence as a whole, including the objective medical evidence and Plaintiff's subjective complaints (Tr. 25-33).

Accordingly, for all the above reasons, the ALJ's decision will be affirmed.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: June 8, 2017.

s/ William C.  Lee
William C. Lee, Judge
United States District Court